Mr. Clawson successfully defended the only claim that was charged against him in the SEC's pleading, and the only claim upon which evidence was presented and argued in the one-day administrative hearing. He also successfully defended the only theory argued in the post-hearing briefs. Instead of denying the SEC all relief, the ALJ took it upon himself to find Mr. Clawson liable for different conduct. Given the SEC's rejection of the alternate grounds for finding misconduct of lulling and misstatements, and the rejection by the administrative law judge of the testimony that, in December, Mr. Clawson was paid checks, what supports a finding that, with those things out of the case, that Mr. Clawson anticipated being paid? Nothing. The case should have ended there and then. Why — and I confess my ignorance in asking this question. That's why I ask it. Why couldn't I assume from the record that Mr. Clawson was being paid every time he sold the stock a percentage, like 3 percent, or whatever people who sell stock are paid? Or if he'd been asked that question, he just said, I made 3 percent of — As a regular commissioner? Yes. As a disclosed commissioner? Yes. Absolutely. He could have been asked that, but he wasn't. And there was no reason to ask him that from the defense standpoint, because it was not an issue. The only issue that he was called upon to confront at the trial was whether or not he received a bribe. He adamantly denied receiving a bribe. The judge accepted his evidence on that. Another question. I'm sorry. Well, the other thing, I've plod through this a while. I was trying to understand the assumption that seems to underlie the decision is that the man would not sell penny stocks or he wouldn't go to Canada to visit the company that has the penny stocks if he didn't expect to get paid. Well, it doesn't tell me that he expects to get paid illegally. Precisely, Your Honor. It seems the scheme is not to sell something and get paid. It's to sell something and get paid a something you're hiding that, if the purchaser knew about it, may suspect whether they should buy the stock. And he could have gone to Canada because there's great fishing around there, and he stopped by the place on the way, or it could have been — I mean, I don't know from the record. Exactly. We are speculating as to all of these reasons, and the reason why we come here with a due process argument is we were never called upon to present that evidence to explain any other issue than the receipt of the bribe. And therefore, there is nothing in the record, there was nothing upon which the SEC could latch to create this. Let me ask one more question, because it — in some of the other cases that we're sitting on at a later time, some of the issues have to do with whether or not the — there's an immigration board, the BIA — I was going to say BIA, but it hit the Bureau of Indian Affairs in my head. But the BIA, in reviewing an administrative law judge's findings, can make findings that are different from those that were made by the lower judge. And there's a — there's some — quite some restriction in just what their power is. Is there any precedent that applies that in this circumstance, where the — where the administrative law judge did not address the issue of whether he anticipated payment, and that's done as an independent ground by the reviewing court, that that can't be done, that that's a denial-of-due process? Well, the SEC, as the reviewing court — Yes. If you will, of the ALJ's decision, can make its own findings, and we don't dispute that. However, they have to — Can they make — can they make a credibility finding, for instance, that we find Thompson and Woodbridge credible, and so we think he did get paid in December? Is that permissible? Well, I don't believe it should be, and I don't believe there's any case in this area that clearly has discussed that precise situation, but I would say that it is impermissible, or no more permissible than this Court would do that function, because you haven't heard the evidence. The SEC, in reviewing the record below, was in no better position than this Court is in reviewing the — the record below, and therefore, I think it would be improper to be making credibility findings if — and these are truly credibility findings that they have to make in order to create this third theory of recovery. It's — they totally have to use credibility findings. The law is, in this circuit, and the — that where the agency is making a credibility finding, it must do so using — it must articulate why it is making that credibility finding, and it must also base that credibility finding on cogent and substantial reasoning that has a close nexus to the factual finding. And here, the SEC — neither the SEC nor the ALJ has given any articulation of reasons as to why they did not believe Mr. Clausen on the key issue when he said, the first time that I heard about this bribery scheme was when I went to Canada. The ALJ disbelieved Mr. Clausen on that question, and the SEC adopted the ALJ's reasoning, but he did not articulate why. Didn't Richman testify that he had been talked to by Clausen and someone else about additional compensation that was available in the sale of the — At Krivik? Yes. Well — And would that, being a similar circumstance, be enough with the association of the same type of — of stock to — to conclude that there was an anticipation of being paid? Or — and the problem I was having was that I don't know — and it troubles me because it may be that the administrative law judge has to decide that, because it depends upon the credibility of Richman, who's been found incredible on the charge that's been made. So I don't know if the administrative law judge would find Richman credible on that. We don't know, because he never articulated why he was making his credibility findings, and this Court, therefore, is in no position to review that, nor was the SEC in a position to understand why the ALJ made those credibility findings. You bring up the Richman testimony, as you correctly say, the judge didn't believe Richman on the main issue in the case, which was, did Clausen receive a bribe? We don't know whether he was relying upon the Richman testimony in discrediting Mr. Clausen's testimony. Had he articulated it, I think he would then have had to come up with a cogent reason to explain why he did not believe Mr. Richman on one major issue, but was willing to believe him on this other issue. There has — there is no finding in the record upon which those kind of credibility issues can be judged, and in the absence of those kind of credibility issues, this Court, in reviewing the opinion below, cannot rely upon the findings of the SEC that are based upon those credibility issues. So let me ask you this. If a broker agreed to accept a bribe, but the bribe was never paid, would that be a violation of the law? Yes, Your Honor. If he did not disclose to his customer that he had advanced knowledge that he was going to receive a bribe, and it just so happens he never actually received the bribe, yes, if he did not disclose that agreement, that would be a violation. So theoretically, anticipation of being paid without disclosing that would be a violation of the rules. Yes, it would. Okay. You're just arguing that in this particular case, there was not fair notice that the anticipation of a bribe was under consideration. Not only was there no fair notice, but there was also no substantial evidence to establish that such an agreement took place. Or that there was anticipation of being paid. Is that your argument? There was any anticipation. Let me ask you this. Look, didn't there come a point in time when the brokerage firm that Mr. Claussen  Yes, Your Honor. And nevertheless, Mr. Claussen referred people to a different brokerage house to get that same stock? The testimony is that there was only one customer who was referred. Mr. Claussen's testimony was that he told that customer that he could not buy that stock at the company by which he was employed, that if that customer wanted to purchase that stock, he would have to go elsewhere. Mr. Claussen did refer him elsewhere. The so the question I think the Court is asking me is, well, what would his reason be for doing that? Exactly. There are a number of reasons. First of all, he still believed in the stock. Secondly, this customer already had purchased the stock beforehand from Mr. Claussen. There was a dip in price. There was a strategy to average down the stock. I believe Mr. Claussen testified, and in fact, the customer also testified that that was the recommendation, to average down his position for the long term. And the only way the customer could do that would be by purchasing the stock at the other brokerage firm. There's nothing inappropriate about that. But isn't it also equally reasonable to infer that there was an anticipation of payment for selling the stock through a different brokerage house? I don't believe it's certainly one inference that could be drawn, but there is an equal inference that could be drawn the other way. And more importantly But was the commission required to draw one inference as opposed to the other? No. But because we were not given notice of the anticipation theory, the commission was required to give us an opportunity to explain that theory of recovery from our point of view. We were never given that opportunity because of the lack of notice, and therefore, the commission, in reaching its decision, only had one side of the story. It was not necessary for, under the theory presented at trial, for Mr. Claussen to explain why he was referring clients elsewhere. His only obligation on the case that was presented was to convince the trier of fact that he had not received a bribe, and he successfully did that. It was unnecessary for him to go beyond the scope of that claim. Counsel, I'm having trouble with this notice argument that you make. As you can recall from the order instituting proceedings, the language is extremely broad, but then it gets more specific, and it says that Claussen sold Enrotec stock to unsuspecting customers in return for undisclosed payments of money made or arranged by the other respondents. Why doesn't that cover the situation? Because it says payments made and arranged by payments in return for payments arranged by the other defendants, arranged by whom, a payment to whom. The specific allegation against Claussen, I mean, that's just the general language, but the specific allegation, charging allegation against Claussen is that he actually received the bribes from the other named respondents as part of this scheme. Isn't that sort of a lesser included? I think you can look at this as a lesser included argument, that the anticipation is a lesser included offense, if you will. The problem there is that the greater offense bears a higher or actually bears a lower standard than the lesser included offense, because once you prove that a bribe has been made, and he anticipated a receipt of the bribe, and certainly if you have a series of bribes being made, once he receives the first bribe, his anticipation has been realized when he makes his second recommendation, and with the evidence of subsequent payments of bribes, you can then infer all of the lesser included offense. That's not what the SEC charged him with here, and that was not the case presented at the hearing. I think the SEC could easily have said to the ALJ, okay, here's our evidence of the bribe, and if you don't believe he received the bribes, here is our evidence that he entered into an agreement to receive a bribe. They didn't do that. Nobody was asked the question. None of these three felons who testified against Mr. Claussen was asked the question, when did you enter into an agreement? When did you arrange to give a bribe to Mr. Claussen? But that question doesn't mean we can go on circumstantial evidence in terms of supporting the inference that was made by the commission. But that is riddled with inconsistencies. If you go to that route, based upon the evidence that was presented at trial, there is no consistency there. You would then have to say, okay, Mr. Claussen circumstantially believed in January that he was going to receive a bribe. The undisputed testimony was that these bribes were paid like clockwork the day after the trade was cleared. So, I mean, a trade clears within five days, money gets released, next day the broker is getting his payment. If all of this circumstantial evidence was to be affected, well, Mr. Claussen was part of this scheme. Why didn't he get paid in January? Why was he continuing to pay to recommend the stock January, February, March, with anticipation that he was going to receive a bribe, and the bribe never materialized? Perhaps the money was running out. The money did run out. But that doesn't change the anticipation argument. If the bribe was not in fact paid but was anticipated, there would still be a violation. But there's no evidence that there was that anticipation. If all you're going by is the circumstantial evidence of recommendations, you then have to look at the entire context, and you then have to look at the entire course of proceedings, January through March. If he's anticipating it, and that's certainly one inference that could be drawn, if that were your case, there also is an alternative inference that can be drawn, is that he was recommending this stock because he truly believed in the stock. And he actually purchased it. Generally, brokers don't recommend stock that they won't get a commission on. I mean, I think we can agree on that, that brokers would not generally recommend a stock for someone to purchase that would not result in financial gain to that broker. I agree. But Your Honor is only referring to one incident, and I believe I've explained that incident to you, that the there is a reason, not necessarily. I thought the record was that Mr. Claussen persuaded, not referred, but persuaded potential investors to stick with this stock, not just referred them. Well, that's the lulling conduct that the Court is referring to, which the commission itself says was improper to even be part of this record because it was never given He was never given notice of it in the OIP. And if I may perhaps add to Justice JoJo Scanlon's question regarding whether the broad language of the OIP covered the anticipation theory, I think you look to what the SEC itself did with the ALJ's conduct. The language that you refer to, JoJo Scanlon, was this broad fraud claim, fraud language. Well, fraud we generally think of as a misrepresentation. There's going to be a misrepresentation somewhere in that. The ALJ said that Mr. Claussen misrepresented this stock, touted this stock to all of these customers using these high-pressure sales tactics, lulling conduct. That's a traditional fraud claim. But the SEC itself said that the language in the OIP didn't cover it. Now, if the OIP didn't cover that kind of conduct, I don't see how you can extend the language of the OIP to the anticipated bribe theory. Counsel, you're down to about a little over a minute. Do you want to reserve or you don't have to, whatever you'd like. I'll reserve. All right, very good. We'll hear from the SEC. Thank you, Your Honor. May it please the Court. I'm Michael Post for the Securities Exchange Commission. An important point for the Court to understand is a point made by a question by Judge Rawlinson, that when a broker recommends a stock to a customer, the broker has to disclose any material faxes to the financial incentive the broker has in connection with that recommendation. And if he fails to do so when he has a financial incentive, that is a violation then and there, whether that financial incentive ultimately materializes or not. The order instituting procedures in this case gave Mr. Claussen notice that the violation charge was recommending the stock while failing to disclose that he had a financial incentive in the recommendation. It doesn't say that. It said he was getting paid. He was receiving payments. I mean, it's not the general language that someone would send a bill of particulars and say, what do you mean by that? I mean, it says he was getting payments. It alleges in paragraph M that he was recommending the stock in return for payments made or arranged by the other respondents. The alternative, made or arranged, suggests that the arranged is payments not made. If it was only payments made, there would be no need for the or. And that arranged has some context in this order instituting procedures. Well, basically, looking at this, I would say made or arranged means that I made a payment to you or arranged for Judge Scanlon to do it. That doesn't seem to me to be unusual language. It has a term of art that you would say also means he didn't receive a payment. It seems like the administrative law judge in the first part of the opinion says that's exactly how the case was tried, that he received a payment. I mean, that's when he summarizes the position of the SEC as to how it was tried. It wasn't tried that he, on anticipation basis or, but was tried on the basis that he received payments. Well, Your Honor, that arranged has some context in this order instituting proceedings. If I can walk the Court through, at paragraph P of the order, there's an allegation that the Respondents or some of the other Respondents arranged for funds to be made available to make the payments to the registered representatives. Excuse me. It also states that the ---- I didn't follow that passage in P. In the second sentence in P. The Respondents, Vanik and Alberta. On behalf of Enrotech, arranged for funds to be made available to make the payments to the registered representatives. In the first sentence, it says the other Respondents solicited registered representatives to participate in the payment arrangements. And in paragraph M, those allegations give context in paragraph M when the order alleges that Claussen participated in this scheme. Selling Enrotech stock to unsuspecting customers in return for undisclosed payments of money made or arranged by the other Respondents. If I could offer an illustration to the Court. If I'm a day laborer and I stand on the corner for a truck that picks up laborers and I know that the driver is, has paid other laborers and has arranged for funds to be available to pay laborers and I get on the truck and I work that day, I am working in anticipation of a payment arranged by the driver. And if an allegation in a complaint said that I worked that day in return for payments arranged by the driver, the facts would support that allegation, even if for some reason I ultimately wasn't paid by the driver. I would like to point out that even if the order instituting proceedings didn't put Claussen on notice of this violation, he was on notice of it from the course of proceedings. Two of his customers testified as to various misrepresentations he made, unwarranted price predictions that he made. And Claussen has acknowledged in briefing that he, that testimony put his basis and motivation for recommending or making those statements at issue. He, in his briefing, said he thought that that testimony was put on to bolster the claim that he had been bribed to make the statements. If he was on notice of that, the defense would have been the same. Well, I had legitimate reasons for making those statements. He's never offered, he's never claimed that any of those, he's never properly claimed that any of those statements had any legitimate basis. As to one statement he offers in reply to this Court, that the reason he said that this was a no-lose situation is because the land the company had bought in Portugal was worth more than the float of the stock. Well, there were other misrepresentations besides that one, but he says that there was nothing in the record that indicates that that wasn't true. Well, that that was true is belied by the fact that these two customers that testified lost about $150,000 in their investments, and this stock price plummeted. Mr. Claussen has also failed to point this Court to any specific prejudice if there was a lack of notice from the OIP in the course of proceedings. The Enforcement Division argued before the Commission that he hadn't specified any evidence he would have offered if he was given any more precise notice of the charge, and he failed to point to any. In this Court, he didn't point to any in his opening brief. Our brief argued that he had failed to point to any evidence he would have offered if he had any more precise notice of the charge. And even in reply, Mr. Claussen has still failed to point to any evidence that he would have offered if he had more precise notice of the charge. Mr. Claussen is incumbent upon Mr. Claussen under this Court's decision in Filiberti and the Aloha Airlines case in the D.C. Circuit side and in our brief to show that a more precise notice would have mattered, and he's failed to do that. There was substantial evidence of the find to support the Commission's finding that Mr. Claussen anticipated additional compensation. Reagan Richmond, who had worked with Claussen, testified that Claussen told him that if he would recommend the stock to his customers, that there would be side payments available. How do we credit that when the person that heard the testimony on the things that were — and the administrative law judge never said, I found that credible, that that conversation was credible, although these other ones where he received payment were not, where he's rejected that. How do we conclude that that testimony was credible? I would say two reasons, Your Honor. Can the administrative law judge do that, the person who heard the testimony? Or can the SEC, I asked that question earlier, make a credibility finding that's different than a credibility finding made by the lower court, and that's not impermissible? Well, the Commission could do that. It wasn't required to do that here. The ALJ did not say, I find Richmond incredible on this point, and then the Commission did the reverse and found him credible. They just found that he, on everything that was involved in his finding, from my reading of it, he was not credible. And of places where he was otherwise found liable, the Commission threw those out because they weren't part of the proceedings. So you get back down to what's the basis to find that he anticipated to be paid. And if you're saying it's Richmond, Richmond's been found incredible by the lower court and he never made a finding that he was credible on something else. And that's the trouble in trying to review the sufficiency of the evidence to support a finding that he anticipated. It is, at least the testimony you just described, has been found on the central issue of the trial, which is that he received bribes to be incredible. That's not correct, Your Honor. The ALJ recited Richmond's testimony that Claussen had told him that bribes would be available and cited the transcript for it. The ALJ found Richmond partially incredible as to the assertion by the Enforcement Division that Claussen had actually received bribes. And the ALJ ---- Excuse me. I'm sorry. Was that with respect to the stock involved in this case or the earlier stock, Claussen's? That was with respect to the stock involved in this case. If my memory serves correctly, it's in footnote 8 of the ALJ's decision where the ALJ recited the testimony, cited the transcript. The ALJ articulated ---- if the Court wants to follow along, I can make sure that's correct. Well, I don't want to spoil your time, but I'm ---- The ALJ articulated the reason why he found Richmond harshly incredible as to the receipt of the bribes, and that reason has no bearing on the testimony about Claussen telling Richmond that payments could be available. The reason that the ALJ didn't partially discredited Richmond was that Richmond's testimony as to the actual receipt of the bribes was inconsistent as to some of the testimony. Some witnesses testified that it was a check. Some said it was cash. They differed as to who was present when they were paid, and that was the basis on which the ALJ partially discredited Richmond. There's no reason as to those inconsistencies as to the details of actual payments that Richmond should be ---- should be discredited as to what Claussen had told him. Why didn't the ALJ, if you're right, make a finding that I also found he violated it because he anticipated being paid based upon what Richmond told him? He didn't do that. He didn't need to because he ---- He did. I mean, somebody had to or he wouldn't be here. I mean, the SEC had to do it for him. The SEC did make an additional factual finding. That's the whole reason that he was found in violation was that factual finding. So the AJ had to do that. I mean, he should have done it. That's not true, Your Honor. It's not necessary. The ALJ, the Enforcement Division asked for certain relief, and the ALJ awarded all the relief that the Enforcement Division requested based on the misrepresentation violations that the ALJ found. Having found a basis to award the Enforcement Division all the relief it requested, it wasn't necessary for the ALJ to then go on. It's analogous to ---- What I mean is he was wrong on the basis that he did it. And so for him to be right, he ultimately would have had to do it on the basis that the SEC later did it. His findings were found not to be within the charge. And so those were voided by the SEC. But all of the evidence that supported the additional factual finding that the SEC made on a few was heard before the ALJ was in the record. Go ahead. I'm troubled by the fact that the SEC can make factual findings. Now, I haven't explored this, but we have a very clear rule with respect to the findings made by the Board of Immigration Appeals that that's ultra-virus. They don't have that power. They have to, if they're troubled by a factual issue, they have to sort of send it, remand it back to the IJ or, in that case, the immigration judge. Is there something comparable at the SEC level, or is there express authority which prevents the commission in a review posture to make findings of fact? There's nothing that prevents it, Your Honor. The commission reviews the ALJ's findings of fact de novo unless they aren't disputed. And the commission also has a rule 411d which provides that the commission may raise any issue it deems material at any point before it issues its final decision so long as the parties are afforded opportunity for written or oral argument on the issue. And the commission may be distinguishable from other agencies in that the five commissioners themselves can hear evidence. The five commissioners themselves could. But there wasn't additional evidence at the SEC level in this case, was there? No, there wasn't, and it wasn't necessary. In fact, Mr. Claussen ---- How can you make findings in the absence of evidence? Well, you couldn't, but that wasn't necessary here, Your Honor. There was substantial evidence already in the record from which the commission could make the factual finding that Claussen anticipated the compensation. We discussed at great length the testimony of Reagan Richmond, but I would like to point out that the record shows that Mr. Claussen made a recommendation of a bulk sale of this stock after the point at which he admits he knew that there were payments available, because he went on a trip to Canada and he met with the paymaster and concedes that the paymaster informed him that bribes were available. That's not true. The record shows that happened in April. And the last sale you're trying to deal with him ends there. I mean, there's a contradiction about when that conversation would have taken place, because in the early part of the findings, the judge finds that he made the sales between January and sometime, I want to say it's the first, January 8th and April. Through April 1st, Your Honor, when the customer that made the purchase after the trip testified that he made a purchase on March 26th and that around that time, Mr. Claussen told him that he had already been to Canada, and then the examiner asks the customer, did you purchase any more shares? And then the customer describes his purchase on April 1st. And although it may be one reading of the record, because there is, I'm aware there is a reference to the trip being in April, that the trip was not before the last sale, the evidence reasonably can be read to mean that there was one purchase after the trip. And I found that ambiguous. I couldn't figure it out. I wasn't at the hearing. But in the findings, he finds the trip was in April, the trial judge on page 8. And the earlier he finds the last sale is, I think, April 1st. Even at the closing argument, Mr. Claussen's counsel argued in the trial that most of the sales were before the Canada trip. And so that gives you some sense at least to what Claussen's counsel thought that customer's testimony meant, which Claussen's counsel had heard that very day. Counsel, there's one thing that's bothering me about this case, and it's been raised by opposing counsel. Today happens to be May 3rd, 2005, but all of the activities of Mr. Claussen that are subject of this debarment and sanction occurred in 1992. The OIP wasn't filed until December of 1996. The ALJ final determination wasn't made until 2001. Are there some due process issues here that perhaps we should explore? I admit the proceeding was of long duration, Your Honor, but it was all justified and, in any event, Claussen consented to the delay. There was concededly no statute of limitations issue as to the OIP being instituted in 1996. It was a little over four years from the conduct. The proceeding was immediately stayed for three years pending criminal proceedings, and Mr. Claussen consented to that. The ALJ affirmatively told counsel that if they felt at any time during that period that they were being disadvantaged to call and let him know, and he would bring everyone together. Mr. Claussen never did that. The commission's rules favor a stay pending criminal proceedings, given the priority of public interest in the criminal proceedings over the commission's civil proceedings. Is there anything in the record with respect to criminal proceedings against Mr. Claussen? The only indication I'm aware of, and I know he was never indicted. Okay. In addition to the fact that the delays were justified and Claussen consented, he's never pointed out any specific prejudice that he suffered from the delay. Again, he's never pointed to any additional evidence that he would have offered. And the commission found that there was no indication in the record that he intended to offer any additional evidence. Up until the point the commission issued its opinion, the commission's rules provided for Claussen to make a motion to the commission to adduce any additional evidence, and he never made such a motion. Even when the commission affirmatively raised on its own motion the issue of whether he anticipated payment, Claussen made no motion saying, wait, I have some evidence that I would offer on that. Thank you, Your Honor. One more question. One more question. Who has the burden of proof in that proceeding? The commission has the burden of proof by preponderance, Your Honor. So, and you're basically asking him to put on testimony that he has no obligation to do with you having the burden and you put your evidence in. No, I'm not. There's no shifting of the burden, the ultimate burden of proof, Your Honor. I'm just pointing out that. I understand. Thank you. Thank you. Mr. Sherwin, you have some reserved time. Just briefly, Your Honor. Obviously, with respect to the lengthy, we are now 13 years after the events. This is, in and of itself, I think, creates serious due process issues. I'm hard-pressed to say that we were prejudiced because we won at the hearing. But we only won on the one claim that we were aware of and that we knew we could successfully defend because he was not guilty of that. Had we been given adequate notice, and counsel says, well, we got notice at the hearing, which took place nine years after the events, clearly we were seriously prejudiced. So what about the fact that Mr. Clausen agreed to the delay? Well, he agreed to the delay because, you know, again, I say we have no problem agreeing to a delay on a case that we know they cannot make because we were not prejudiced by that. But once they changed the rules, once they changed the game, then we were prejudiced and we weren't advised of that until the, according to the commission, the day of the hearing when they changed their theory. In fact, they didn't change the theory on the day of the hearing. The case was tried on an actual bribe theory. Counsel should be left with that strategic decision, and they should have be found to have waived any claim for an anticipation theory. That's what this Court would say in reviewing a trial court for error. If you did not raise the issue in the trial court properly, then it's waived. This anticipation theory was not raised. It's not necessarily true, counsel, because in criminal cases, the indictment can be amended after the fact to allege crimes that were proved during the trial. At the trial. You can amend it at the trial. But here, that's where the prejudice would be suffered if, in fact, we were given notice. We weren't given notice. The pre-hearing briefs claimed bribe. The argument, the opening statement claimed bribe. The closing claimed bribe. It wasn't until after we won the bribe claim that they changed horses and went to the anticipation of bribe. We, therefore, had no opportunity or notice to present evidence which the commission's counsel now says, we haven't told you where the evidence is that we would have produced. We can't do that because there is nothing in the record. And the reason there is nothing in the record is because we weren't given prior notice. And timing of the notice is critical here. We weren't given notice prior to the hearing. All right. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and the Court will adjourn. All rise. We are here to hear you. All those having had business before this audit report, the United States Court of Appeals for the Ninth Circuit shall now depart before this Court now stands adjourned. Thank you. Thank you. Thank you.
judges: O'scannlain, Rawlinson. Whaley